UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BRITTNEY GOBBLE PHOTOGRAPHY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-306-HSM-DCP |
| | ) | |
| WENN LIMITED, and USA ENTERTAINMENT | ) | |
| NEWS, INC., d/b/a/ "WENN" and "WORLD | ) | |
| ENTERTAINMENT NEWS NETWORK," | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 95] of the District Judge.

Now before the Court is Plaintiff's Motion for Default Judgment Against Defendants Wenn Limited and USA Entertainment News, Inc. [Doc. 93]. On October 16, 2018, the undersigned ordered Defendants to appear before the Court on November 9, 2018, to show cause why a default judgment should not be entered. [Doc. 97]. On November 9, 2018, Attorney Dale Quisenberry appeared on behalf of Plaintiff. No one was present on behalf of Defendants. Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 93**] be **GRANTED IN PART AND DENIED IN PART.**

I.      **BACKGROUND**

The Court will begin with the allegations in the First Amended Complaint and then turn to the procedural history of this case.

## A. Allegations in the First Amended Complaint

The Complaint in this matter was filed on June 7, 2016, and later amended on September 20, 2017. [Doc. 51]. The First Amended Complaint ("Amended Complaint") alleges violations of the Copyright Act and the Digital Millennium Copyright Act ("DMCA"). In addition, the Amended Complaint alleges unfair competition under Tennessee common law.

The Amended Complaint states that Johnny and Brittney Gobble (collectively, the "Gobbles") are active leaders in the cat breeding community. [Doc. 51 at ¶ 9]. Mrs. Gobble specializes in artistic photography of cats and other pets, and Mr. Gobble is a veterinarian. [*Id.*]. More recently, the Gobbles have taken the lead in establishing the Lykoi cat, which is also known as the "werewolf cat," as a new breed with the International Cat Association. [*Id.*]. The Lykoi cat achieved full championship status as of May 2017. [*Id.*].

The Amended Complaint states that Mrs. Gobble is the author of the vast majority of professional photographs of Lykoi cats. [*Id.* at ¶ 10]. By virtue of Dr. Gobble's expertise as a veterinarian with the Lykoi breed and Mrs. Gobble being the exclusive source of the best professional images of the Lykoi breed, along with their experience in developing and establishing the Lykoi breed, the Gobbles are routinely contacted by writers and bloggers requesting Mrs. Gobble's images and commentary from Dr. Gobble for use with an article about the Lykoi breed. [*Id.*]. The Gobbles have provided commentary and Lykoi images in response to many of the requests, all at no charge, but they have always made it clear to the recipients that they are not allowed to distribute the images and that the credit for the images should be given to Mrs. Gobble. [*Id.*].

The Amended Complaint involves fifty-five images ("Images") of the Lykoi cats that Mrs. Gobble photographed. [*Id.* at ¶ 11]. The copyrights for each of the Images, except Image 26,

("Registered Images") were registered with the United States Copyright Office in compliance with all Copyright Office requirements under four copyright registrations. [*Id.* at ¶ 14]. Plaintiff is the owner by assignment from Mrs. Gobble of all rights, title, and interest with respect to the four copyright registrations. [*Id.* at ¶ 19]. The four copyright registrations include as follows:

- United States Copy Registration No. VA 1-976-214, entitled "Lykoi 2015 Images" (hereinafter, the "214 Registration"), which includes Images 4-6, 17, 20-21, 27, 31, 33, 35-36, 42, 52);

- United States Copy Registration No. VA 1-987-108, entitled "Lykoi Images 2014" (hereinafter, the "108 Registration"), which includes Images 1-3, 7-8, 10-16, 18, 22-25, 28-30, 32, 34, 37-39, 41, 43-51, 53-55;

- United States Copyright Registration No. VA 2-031-115, entitled "Group Registration Photos, Brittney Gobble 2014 Images, published March 17, 2014, to October 2, 2014, 4 photos" (hereinafter, the "115 Registration"), which includes Images 19 and 40; and

- United States Copyright Registration No. 2-031-117, entitled "Gobble Image 2015" (hereinafter, the "117 Registration"), which includes Image 9.

[*Id.* at ¶¶ 14-18].

The Amended Complaint states that on November 2, 2015, Clare Penn ("Penn") sent an email on behalf of Defendants to the Gobbles. [*Id.* at ¶ 21]. In her email, Penn requested a selection of high resolution images of the Lykoi breed to accompany editorial text for a feature/news item regarding the Lykoi breed of cats ("Article"). [*Id.* at ¶ 24]. Later that evening, Dr. Gobble responded to Penn's email, in part, as follows:

> Here is a link to an album of some of my hi-res images that I give permission to be used. I do not give permission for these images to be distributed, or to be used in an article (or other media) that is purposefully derogatory toward our breed (we have a good sense of humor, so jokes are fine! Just not questioning ethics or being cruel). Whenever possible, please credit images to "Brittney Gobble."

3

[*Id.* at ¶ 25, Doc. 51-1 at 11]. Dr. Gobble also included a link to a Dropbox folder containing the Images. [Doc. 51 at ¶ 25].

The Amended Complaint states that after receiving Dr. Gobble's email, Defendants distributed the Images to at least one of its customers, including 41 Sinclair Broadcast Group, Inc. ("Sinclair") television or radio stations. [*Id.* at ¶¶ 37].[1] In addition, the Images gave false credit to WENN or WENN.com. [*Id.* at ¶ 44]. On or about November 12, 2015, Mrs. Gobble discovered that Defendants had distributed her copyrighted Images without permission or a license, thereby infringing on her copyrights. [*Id.* at ¶ 39]. The Gobbles contacted Defendants to advise them of the copyright infringement, and Defendants' representative stated that someone with the licensing department would call Mrs. Gobble to discuss the situation. [*Id.*]. No one called Mrs. Gobble regarding the copyright infringement. [*Id.*]. Later, the Gobbles retained counsel, and their counsel advised Defendants of the copyright infringement, demanded that they cease and desist, and demanded compensation for the unauthorized distribution of the Images. [*Id.* at ¶ 41]. These efforts were unsuccessful. [*Id.* at ¶ 42].

Specifically, the Amended Complaint brings four causes of action: (1) direct copyright infringement, 17 U.S.C. §§ 501 *et seq.*; (2) contributory copyright infringement, 17 U.S.C. §§ 501 *et seq.*; (3) falsification of copyright management information, 17 U.S.C. § 1202(a); and (4) unfair competition under Tennessee common law. [*Id.* at 135-44].

## B. Procedural History

On October 23, 2017, Defendants filed an Answer, a Third-Party Complaint against Johnny and Brittney Gobble, and a Counterclaim against Plaintiff. [Doc. 57]. On November 6, 2017,

---

[1] The Amended Complaint lists the Sinclair media sources and alleges that Sinclair reproduced and displayed without license or permission several of the Registered Images on the listed media sources. [Doc. 51 at 43-135].

4

Defendants' counsel moved to withdraw from representation in this case. [Doc. 60]. Subsequently, on November 30, 2017, the Court allowed counsel to withdraw but admonished Defendants that they needed to find substitute counsel because corporations cannot appear in federal court except through an attorney. [Doc. 74].

Defendants did not obtain substitute counsel, and on May 10, 2018, Plaintiff requested that the Clerk enter a default against both Defendants. [Docs. 85, 87]. The Clerk entered defaults against both Defendants on May 31, 2018. [Docs. 90, 91]. On July 12, 2018, Plaintiff filed the instant Motion.

The Court issued an Order [Doc. 92] on October 16, 2018, ordering Defendants to appear before the undersigned on November 9, 2018, to show cause why Plaintiff's Motion should not be granted. As mentioned above, Attorney Quisenberry appeared on behalf of Plaintiff. No representative appeared on behalf of Defendants.

During the hearing, Plaintiff stated that this case is primarily a copyright infringement case, wherein Defendants have stopped participating. With respect to the copyright infringement claims (Counts I and II), Plaintiff elected to pursue its actual damages as opposed to its statutory damages. Plaintiff stated that it retained an expert, Professor Jeffrey Sedlik ("Sedlik"), who opined that the actual damages for the copyright infringement are approximately 1.9 million dollars. Further, Plaintiff submitted that Sedlik opined that the actual damages for the copyright infringement should be multiplied three to five times based on the scarcity of the Registered Images. Plaintiff explained that the Registered Images that are the subject of this lawsuit are of a new breed of cat.

In addition, during the hearing, with respect to its claim under the DMCA, Plaintiff requested damages for Defendants' distribution of the Images and for Defendants' customers'

5

distribution of the Images, which falsely credited WENN or WENN.com.[2]  Further, Plaintiff withdrew its request for an injunction as it related to the removal of the Images from Defendants' customers' websites, but maintained that an injunction against Defendants was appropriate because of Defendants' deliberate behavior.  While Plaintiff acknowledged that it had no evidence that Defendants were continuing to violate its rights, Plaintiff argued that there is no harm in issuing an injunction.  At the conclusion of the hearing, the Court granted Plaintiff leave to file a supplemental brief to address the questions that the Court raised at the hearing.

Finally, the Court held a telephone conference on February 11, 2019, to seek clarification on Plaintiff's request for damages under the DMCA for Defendants' distribution of the Images. As a result of this telephone conference, Plaintiff filed a Notice of Withdrawal of Claim for CMI Damages from Motion for Default Judgment [Doc. 101].  Specifically, Plaintiff withdrew its claim for damages with respect to Count III (falsification of copyright management information) as set forth in paragraph three in its Motion for Default Judgment [Doc. 93].

## II.    POSITIONS OF THE PARTIES

In the instant Motion, Plaintiff requests that the Court enter a default judgment against Defendants with respect to Counts I-IV in the Amended Complaint.  With respect to Counts I and II, Plaintiff states that it is entitled to a default judgment for direct and contributory copyright infringement.  Plaintiff submits that a party may establish a copyright infringement claim by demonstrating two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  Plaintiff argues that it owns four copyrights with respect to Images 1-55, except Image 26, and that the effective registration date is October 30, 2015.  Plaintiff asserts that all of the copyright infringement alleged in this action occurred after October 30, 2015.

---

[2] Plaintiff later withdrew its request for damages under the DMCA. *See infra* note 4.

In addition, Plaintiff contends that Defendants copied the Registered Images and distributed them to their customers and infringed Plaintiff's copyrights by displaying the Registered Images on the customers' websites. With respect to actual damages, Plaintiff requests a total of $5,754,941.88 to $9,591,569.80. Plaintiff's request for actual damages is based on a report by Sedlik. [Doc. 93-12].[3]

Plaintiff submits that it is also entitled to a default judgment with respect to Count III in the Amended Complaint for Defendants' violation of DMCA, 17 U.S.C. § 1202. Plaintiff argues that Defendants committed numerous copyright management information ("CMI") violations by falsely crediting WENN or WENN.com for the Images provided or distributed to Defendants' customers. Further, Plaintiff argues that Defendants' conduct was willful. Plaintiff, however, no longer seeks damages for the DMCA violations.[4]

Furthermore, Plaintiff states that it is entitled to a default judgment with respect to its unfair competition claim in Count IV of the Amended Complaint. Plaintiff explains that there are three elements to an unfair competition claim: (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff, (2) in engaging such conduct, defendant acted

---

[3] The Court observes that Plaintiff also outlined its request for statutory damages, but at the November 9 hearing, Plaintiff elected to pursue its actual damages. Thus, the Court will not summarize Plaintiff's position with respect to its statutory damages pursuant to 17 U.S.C. § 412.

[4] In the Motion, Plaintiff sought two types of damages under the DMCA: (1) Defendants' distribution of the Images, and (2) Defendants' customers' distribution of the Images. Plaintiff maintained that the Images that Defendants and its customers distributed gave false credit to WENN.com or WENN. With respect to first category of damages, (i.e., Defendants' distribution of the Images), Plaintiff requested the statutory maximum, or $16,500,000. Plaintiff explained that Defendants distributed fifty-five (55) Images containing false CMI to twelve (12) customers. Plaintiff, however, withdrew its request for such damages. *See* [Doc. 101]. With respect to the latter category of damages, Plaintiff explained that it found 1,858 instances in which the Images that were provided or distributed by Defendants were reproduced or displayed on other websites. Plaintiff requested statutory damages in the range of $6,295,000 to $62,950,000. In its Supplemental Brief, however, Plaintiff withdrew this request. *See* [Doc. 100].

with an intent to deceive the public as to the source of services offered or authority of its organization, and the (3) public was actually confused or deceived as to the source of the services offered or authority of its organization. Plaintiff argues that Defendants passed off the Images as their own by crediting WENN for the Images, they did so knowing it was false for them to do so and with the intent to deceive the public as to the proper credit for the Images, and that such actions actually deceived the public into believing that it was proper to credit WENN for the Images. Plaintiff, however, does not request a separate damages award for Count IV.

Finally, Plaintiff requests a permanent injunction. Plaintiff submits that the Copyright Act authorizes permanent injunctive relief as a remedy for copyright infringement on such terms as the Court may deem reasonable to prevent or restrain infringement of a copyright. In addition, Plaintiff states that DMCA authorizes permanent injunctive relief with respect to Defendants' falsification of CMI. Plaintiff argues that it has established that Defendants infringed on its copyrights and violated DMCA by falsifying CMI. Plaintiff submits that before the lawsuit was filed, Defendants refused to remove the Images from their archives and failed to cease and desist further distribution of the Images.[5]

Plaintiff also filed a Supplemental Brief [Doc. 100], citing case law for its argument that it is entitled to statutory damages on its DMCA claim for all of its Images, including Image 26, even though Image 26 is not registered with the Copyright Office. Plaintiff has now withdrawn its

---

[5] As mentioned above, in the Motion, Plaintiff also requested an injunction because Defendants failed to take the necessary action to remove the Images from their customers' websites. Plaintiff stated that the Images are still on numerous customers' websites. At the November 9 hearing, however, Plaintiff withdrew its request for an injunction relating to Defendants' customers' websites. *See also DISH Network L.L.C. v. Simmons*, No. 4:17-CV-53, 2018 WL 3647169, at *9 (E.D. Tenn. June 28, 2018) (recommending that the proposed injunction apply only to the defendant and not to individuals outside the scope of the case), *report and recommendation adopted*, 2018 WL 3623764 (E.D. Tenn. July 30, 2018).

8

request for all damages under the DMCA.[6]  Finally, Plaintiff further explained how Sedlik arrived at his damages calculation for the copyright infringement claim.  Specifically, at the hearing, the Court inquired about Sedlik's methodology, including how he utilized comparative stock photography license fee quotes.  In its Supplemental Brief, Plaintiff states that such quotes are for a one-year license, although the infringing usages occurred for more than a year.  The comparative photographs Sedlik used, however, were of generic cat photographs because at the time of the infringement, there were no other quality photographs of Lykoi cats available in the stock photography marketplace.  Plaintiff states that Sedlik then applied a suitable scarcity multiplier to the fees for the generic cat photographs.  Plaintiff explains that damages cannot be determined directly from the stock agency quotes.  Instead, Plaintiff submits that Sedlik employed a suitable methodology to determine the average fees, applied a scarcity multiplier, adjusted the fees for inflation where appropriate, and applied those fees to hypothetical licenses derived from known usages of the infringed photographs.

Defendants did not respond to Plaintiff's Motion or the Supplemental Brief.

## III.    ANALYSIS

The Court has considered Plaintiff's Motion and the Supplemental Brief, the oral argument presented at the November 9 hearing, and the history of this case.  Accordingly, for the reasons further explained below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 93**] be **GRANTED IN PART AND DENIED IN PART.**

The Court will first discuss the standard with respect to default judgments pursuant to Federal Rule of Civil Procedure 55 and then turn to Plaintiff's requested amount of damages.

---

[6] *See supra* note 4.

## A. Rule 55

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the entry of default, a party may apply for default judgment, and the Court may conduct a hearing – if needed, to perform an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter – prior to entering default judgment. Fed. R. Civ. P. 55(b). "Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief")).

In the present matter, on November 30, 2017, Defendants' counsel was allowed to withdraw from this matter, and the Court admonished Defendants that they needed to obtain substitute counsel because corporations are not allowed to appear in federal court except through counsel. Despite the Court's warnings, Defendants failed to obtain substitute counsel. *See Shapiro, Bernstein & Co. v. Cont'l Record Co.,* 386 F.2d 426, 427 (2d Cir. 1967) (finding default judgment appropriate because the defendant corporation failed to defend under Rule 55 when it disregarded the court's order to retain substitute counsel, which explained defendant could not proceed without an attorney); *GCIU-Employer Ret. Fund v. Amerigraph, LLC*, No. 2:06-CV-1072, 2008 WL 762082, at *1 (S.D. Ohio Mar. 20, 2008) (granting plaintiff's motion for default judgment against a corporate defendant after defendant's counsel withdrew and defendant failed to obtain substitute counsel).

10

There is no dispute that the Clerk has entered a default against Defendants in accordance with Rule 55. [Docs. 90, 91]. Defendants, who have not obtained substitute counsel, have stopped participating in discovery and have failed to respond to Plaintiff's requests for entry of default and default judgment. Further, when ordered to appear before the Court on November 9, 2018, no one appeared on behalf of Defendants. The Court finds that Defendants have failed to defend this matter. *See* Fed. R. Civ. P. 55(a). Accordingly, the Court **RECOMMENDS** that a default judgment be entered against Defendants.

Taking as true the allegations in the Amended Complaint [Doc. 51], the Court **INCORPORATES BY REFERENCE** the allegations as set forth by Plaintiff. The Court accepts all such allegations, and specifically, the Court **FINDS**, based upon entry of default, that Defendants have committed violations of the Copyright Act and of the DMCA. The Court also **FINDS** that Defendants have engaged in unfair competition under Tennessee common law.

The Court will now turn to the amount of damages that Plaintiff has requested.

### B.    Damages

Plaintiff requests damages for Count I (direct copyright infringement) and Count II (contributory copyright infringement) in the Amended Complaint pursuant to 17 U.S.C. § 504. Plaintiff has withdrawn its request for damages for Defendants' violations of the DMCA pursuant to 17 U.S.C. § 1203. *See* [Docs. 100, 101]. Plaintiff has not requested damages under its unfair competition claim pursuant to Tennessee law. Finally, Plaintiff has requested an injunction against Defendants.

The Court will address each category of damages separately.

11

### 1. Direct and Contributory Copyright Infringement

Plaintiff submits that it owns four valid copyright registrations encompassing fifty-four (54) of the copyrighted images that Defendants infringed. Plaintiff maintains that Defendants copied the Registered Images and distributed them to their customers, who then also infringed Plaintiff's copyrights by displaying the Registered Images on their websites.

Pursuant to 17 U.S.C. § 504, an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. With respect to actual damages and profits, § 504 provides as follows:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

Courts have recognized that § 504(b) does not elaborate on how damages are to be calculated. *Leonard v. Stemtech Health Sciences*, No. 08-067-LPS-CJB, 2013 WL 5311295, at *4 (D. Del. Sept. 23, 2013). In construing the above statute, courts have explained that a copyright owner's actual damages "may include in appropriate cases the reasonable license fee on which a willing buyer and willing seller would have agreed for the use taken by the infringer." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 359 (6th Cir. 2007) (quoting *Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001)); *see also Leonard*, 2013 WL 5311295, at *4 (explaining that "courts have construed 'actual damages' by examining the fair market value of a license fee that the copyright owner would have obtained for the infringer's use of the copyrighted material") (other citations omitted). Courts reason, "[W]here the infringer could have bargained

with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work." *Leonard*, 2013 WL 5311295, at *4 (quoting *Jarvis v. K2 Inc*. 485 F.3d 526, 533 (9th Cir. 2007)).

At the hearing, Plaintiff elected to proceed with its request for actual damages under the above statute. In support of its request, Plaintiff submitted a report from Sedlik, who conducted a damages analysis on the infringing uses of the Registered Images and opined that Plaintiff's base actual damages for Defendants' infringement is $1,918,313.96.[7] Specifically, Sedlik states that in the image licensing industry, clients either commission new images ("assignment images") or acquire rights to existing images ("stock images"). Sedlik opines that based on his review of the documents and other information provided, the parties would have engaged in one or more licensing agreements that would allow Defendants to make use of the photographs. Sedlik explains his opinion as follows:

> To arrive at a reasonable estimate of licensing fees applicable to the infringing usages, I obtained comparative stock photography license fee quotes from three stock photography agencies. I calculated total fees based on the information available to me, including some or all of these factors: the media in which the Photograph was reproduced, circulation, size, placement, and period of use. Where data for one or more criteria were unknown, I made the best approximation possible under the circumstances.

> In addition to the license fee computations performed by obtaining reference fee quotes reasonably matching the alleged unauthorized usages to the greatest extent possible, I have relied on my personal knowledge and experience in image licensing and in the development and management of industry standards for image licensing.

> I requested that [Plaintiff] provide an accounting of the usages discovered to date. [Plaintiff] provided an accounting, "Table of Usages," attached as Exhibit F. In the event that the usage data

---

[7] In a section titled, "Assumptions" in Sedlik's report, he was instructed to assume that "actual and statutory damages for copyright infringement (if any) in this matter, are applicable only to the 54 registered photographs." [Doc. 93-12 at 11].

13

provided by [Plaintiff] is determined to be incorrect, I will review and consider that information and make revisions to my calculations where appropriate.

[Doc. 93-12 at 32-33].  Based on his professional experience and review of the facts in this case, Sedlik calculated as follows:

| Media Category | Base Actual Damages |
|---|---|
| Digital Media—Corporate and Promotional Site | $50,295.78 |
| Digital Media—Social Media | $10,373.25 |
| Publishing and Editorial—Electronic (Web) | $1,857,644.93 |
| **Total** | **$1,918,313.96** |

The Court has considered Sedlik's opinion, along with his professional experience, and finds his calculation to be reasonable under the circumstances.  As explained above, courts have allowed plaintiffs to establish that the infringed item had a fair market value in the form of a licensing fee.  *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.,* 115 F. Supp. 3d 518, 526 (E.D. Pa. 2015) ("The majority of courts to have considered the issue have concluded that 'actual damages' under the Copyright Act, 17 U.S.C. § 504(b), are limited to the fair market value of a license defendant would have obtained pre-infringement for use of the copyrighted work.").  Here, Sedlik obtained licensing quotes from three different stock photography agencies using generic cat photographs.  He then reviewed the media in which the photograph was used, the circulation, the size, the placement, and period of use to determine a license fee from three different media categories: (1) digital medial from corporate and promotional sites; (2) digital media from social media; and (3) publishing and editorial sites.  The Court observes that Sedlik's opinion is unrebutted.  Accordingly, the Court **RECOMMENDS** that Plaintiff be awarded $1,918,313.96 as base actual damages for Defendants' direct and contributory copyright infringement.

14

Plaintiff also seeks to apply a multiplier ranging from three to five as part of the fair market value calculation given the scarcity of the photographs. The Sixth Circuit has not opined on whether such multipliers are appropriate. The Third Circuit Court of Appeals, however, upheld a jury verdict that included a multiplier that was used to calculate the fair market value. *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376 (3d Cir. 2016). In *Leonard*, defendant challenged plaintiff's expert's use of a multiplier, arguing that a multiplier is simply an impermissible penalty akin to punitive damages, which are not recoverable under § 504. *Id.* at 393.[8] The Third Circuit recognized that several courts have correctly rejected the use of a multiplier for punitive purposes. *Id.* The Court continued, however, that the case did not involve the use of a multiplier to penalize unauthorized use but rather was used to calculate a fair market value. *Id.* The Court reasoned:

> The jury had sufficient evidence to credit Sedlik's opinion and conclude that the sum calculated from the stock photo agency rates did not represent a full calculation of the fair market value of Leonard's images because the rates did not account for scarcity and exclusivity. Put differently, Sedlik's fair market value calculation in this case had two components: the stock agency quotes and the adjustments to reflect the uniqueness of the images and the impact of Stemtech's usage. The multipliers here reflected a premium that, according to Sedlik, the market would find acceptable given the scarcity and exclusivity of the images as compared to the images for which he had secured rates for comparative purposes. The unrebutted evidence here showed that the fair market value calculation was complete only after these additional factors were applied.

*Id.*

In the instant matter, Sedlik explains as follows:

> The actual damages estimated above do not contemplate the scarcity of Lykoi photographs in 2015. At that time, few if any other photographers or stock photo agencies offered quality photographs of Lykoi cats. This is evidenced by Defendants' selection of the Photographs. Scarce images typically demand much greater license fees than common images, often 3 to 5 times the fee for a common

---

[8] The Court observes that plaintiff's expert in *Leonard* was Sedlik.

15

image. The application of the scarcity multipliers is not a punitive measure. The scarcity multiplier serves only to adjust the fair market value of generic, common cat photographs to the value of scarce Lykoi photographs in 2015. Below I provide a range of actual damages, adjusted for the scarcity of the Photographs in 2015.

| Base Actual Damages | Scarcity Multiplier 3X | Scarcity Multiplier 5X |
|---|---|---|
| $1,918,313.96 | $5,754,941.88 | $9,591,569.80 |

The Court finds a multiplier of three (3) to be appropriate in this case. Here, Sedlik used generic cat photographs to estimate the fair market value; however, these cat photographs did not account for the scarcity of the Registered Images that are the subject of this lawsuit. Plaintiff's unrebutted evidence shows that the fair market value calculation was complete only after Sedlik accounted for the scarcity of the Registered Images. *See Leonard*, 834 F.3d at 376. The Court recommends a multiplier of three (3), given the scarcity of the photographs and Sedlik's unrebutted opinion that a multiplier represents the fair market value of the photographs. Accordingly, the Court **RECOMMENDS** that Plaintiff be awarded a total award of $5,754,941.88 in actual damages for Defendants' direct and contributory copyright infringement.

### 2. Injunctive Relief

Plaintiff requests injunctive relief pursuant to the Copyright Act and under the DMCA.[9] Plaintiff maintains that it has established that Defendants infringed on its copyrights and violated the DMCA by falsifying CMI. Plaintiff states that prior to the lawsuit being filed, Defendants refused to remove the Images from their archives and failed to cease and desist further distribution of the Images unless such action, without any compensation, would satisfy Plaintiff.

The Copyright Act authorizes temporary or final injunctive relief as a remedy for copyright infringement "on such terms as [the court] may deem reasonable to prevent or restrain infringement

---

[9] As mentioned above, Plaintiff withdrew its request for an injunction as it relates to Defendants' customers. *See supra* note 5.

of a copyright." 17 U.S.C. § 502(a). Further, the DMCA also authorizes the Court to issue an injunction. 17 U.S.C. § 1202(b). "A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (citing *eBay, Inc. v. MercExchange, LLC,* 547U.S. 388 (2006) (explaining that the Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed")). Specifically, a plaintiff must establish as follows:

> (1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction.

*Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay*, *Inc.*, 547 U.S. 388).

Further, in construing a request for injunctive relief under the Copyright Act, the Sixth Circuit has explained, "It is uncontroversial that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction." *Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 492 (6th Cir. 2007) (other quotations omitted); *see also 321 Studios v. Metro Goldwyn Mayer Studios, Inc.,* 307 F. Supp. 2d 1085, 1105 (N.D. Cal. 2004) (explaining that under the DMCA, permanent injunctions are "appropriate if there is a reasonable likelihood of future violations absent such relief and, in cases brought by private plaintiffs, if the plaintiff lacks and adequate remedy at law") (internal quotations omitted). Further, the Sixth Circuit has reasoned, "Not only is the issuance of a permanent injunction justified "[w]hen a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction." *Id.* (quoting *Walt Disney Co. v. Powell,* 897 F.2d 565, 567 (D.C. Cir. 1990)) (emphasis in *Bridgeport Music*). This is because "in copyright infringement actions, the denial of a request for injunctive relief could otherwise 'amount to a forced license to use the creative work

17

of another.'" *Id. (quoting Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967–68 (8th Cir. 2005)) (other quotations omitted).

The Court finds that Plaintiff has established the requirements for a permanent injunction. Specifically, with respect to the first requirement, "copyright infringement is presumed to give rise to irreparable injury." *Microsoft*, 490 F. Supp. 2d at 882. Defendants have not rebutted this presumption, and the Court has already determined that Plaintiff established that Defendants infringed on its copyrights and violated the DMCA by falsifying CMI. With respect to the balance of hardships, Plaintiff argued at the hearing, and the Court agrees, that there is no harm to Defendants in issuing an injunction. *See id.* at 883 ("With regard to the balance of hardships, the Court finds a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the Copyright Act and Lanham Act."). With respect to the public's interest, the Court finds that the public interest is served by upholding copyright protections. *See id.* (citing *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir. 1983) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.")).

The Court has also considered whether Plaintiff has established that there is no adequate remedy at law, especially in light of Plaintiff's statement at the hearing regarding the lack of any evidence that Defendants are continuing to violate Plaintiff's rights. "[T]he Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citing *Audi*, 469 F.3d at 550).

Specifically, at the hearing, Plaintiff acknowledged that it had no evidence of Defendants' continuing infringement or violations of DMCA but argued such evidence is not required due to Defendants' deliberate behavior. In this case, the Court agrees with Plaintiff that an injunction is necessary given the substantial likelihood of future infringement.

As several courts have noted, "[o]ne way of demonstrating a threat of future infringement is showing a defendant repeatedly ignored asserts rights." *Virtual Studios, Inc. v. Beaulieu Grp., LLC,* 987 F. Supp. 2d 769, 778–79 (E.D. Tenn. 2013) (other citations omitted). In *Virtual Studios,* the court found that there was evidence of defendant's use of the copyrighted images even after it had notice of plaintiff's disputed use of the images. *Id.* at 779. Further, the court observed that many of the images were still in circulation and "could make it back into the hands of defendant." *Id.* The court concluded, "Given the low burden that an injunction precluding future infringement places on [defendant], this risk counsels in favor of such an injunction." *Id.*

In this case, after Mrs. Gobble discovered that Defendants had distributed the Images without permission or a license, she spoke with Defendants' representative and explained that the Images were copyrighted and that Defendants had violated her copyrights. [Doc. 51 at ¶ 39]. Defendants' representative told Mrs. Gobble that someone with the licensing department would call her to discuss the situation, but no one contacted her. [*Id.*]. A number of emails were later exchanged on November 12, 2015, between Dr. Gobble and Defendants regarding the infringement. [*Id.* at ¶ 40]. Mrs. Gobble retained counsel, who corresponded with Defendants' Chief Executive Officer ("CEO"), Lloyd Beiny ("Beiny"). [*Id.* at ¶ 41]. Mrs. Gobble's counsel advised Defendants of the copyright infringement and demanded that they cease and desist and compensate Mrs. Gobble for the authorized distribution. [*Id.*]. Such efforts were unsuccessful,

and Beiny refused to remove the images from Defendants' archives and refused to cease and desist. [*Id.* at ¶ 42].

The Court finds that Defendants continued to use Plaintiff's Images after it had notice of Plaintiff's disputed use of the Images.[10]  The Court also observes that in July 2018, when Plaintiff's Motion was filed, many of the Images were still on numerous websites.  *See* [Doc. 92-2 at ¶ 39] ("Numerous of the above-identified websites still today are displaying many of the Lykoi cat images at issue in this lawsuit.").  Thus, such Images could make it back into the hands of Defendants.  *See Virtual Studios,* 987 F. Supp. 2d 769 at 779.  The Court has also considered Plaintiff's statement at the hearing that it had no evidence at that time of Defendants' continuing violations. The Court observes, however, that the standard for an injunction is the "risk of future infringement" and the "Court need not find continued infringement is actually occurring."  *Id.* at 779 n.4.  Accordingly, the Court **RECOMMENDS** that Plaintiff's request for an injunction be **GRANTED**.  *See also Disney Enter. v. Farmer*, 427 F. Supp. 2d 807, 819 (E.D. Tenn. 2006) (explaining that "courts also regularly issue injunctions as part of default judgments") (internal quotations omitted).

## IV.    CONCLUSION

Based upon these findings and taking all well-pleaded allegations in the Amended Complaint as true, the undersigned **RECOMMENDS**[11] as follows:

---

[10]  The Court notes that Plaintiff failed to mention at the hearing or in its filings that Defendants sent a Kill Notice.  [Doc. 53-3].  The Kill Notice has not escaped the Court's attention or consideration in its analysis.  The Court notes, however, that it is unclear who received the Kill Notice, given that the "To" line of the Kill Notice states, "undisclosed-recipients."  [*Id*. at 2].

[11]  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district

1. The Motion for Default Judgment [**Doc. 93**] be **GRANTED IN PART AND DENIED IN PART;**

2. Defendants be **ADJUDGED** responsible for violating the Copyright Act by direct and contributory infringement, for violating the Digital Millennium Copyright Act, and for engaging in unfair competition under Tennessee law;

3. That judgment in the total amount of $5,754,941.88 be awarded to Plaintiff; and

4. That Plaintiff be granted injunctive relief as stated in its proposed order [Doc. 93-13] but without the following language: "and all others in active concert or participation with any of them."

The Clerk of Court is **DIRECTED** to send Defendants a copy of this Report and Recommendation at the address provided in Plaintiff's Motion for Default Judgment [Doc. 19].

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

21